**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 15, 2009[*]
Decided July 16, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-3713

| | |
|---|---|
| MATTHEW JACKSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 07-cv-0450-MJR-CJP |
| UNITED PARCEL SERVICE, INC., *Defendants-Appellees*. | Michael J. Reagan, *Judge*. |

**O R D E R**

In this diversity action for retaliatory discharge under Illinois law, Matthew Jackson, an Illinois citizen, sued UPS, an Ohio corporation with its principal place of business in Georgia. Jackson claims that UPS fired him in 2007 in retaliation for a worker's

---

[*]After examining the briefs and the records, we have concluded that oral argument is unnecessary. Thus, the appeals are submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

compensation claim he filed in 1999.  The district court granted UPS summary judgment, and we affirm.

In January 2007 Jackson drove to a customer's home and confronted the customer, Jamie Elliott, over a complaint she had lodged with UPS that accused him of leaving a seven-foot skid mark in her driveway.  According to a written report Elliott submitted to UPS, Elliott refused to open her storm door for Jackson because he seemed agitated, and she asked him to leave three times before he finally departed.  At that point she called the sheriff.

The day after the incident, Elliott telephoned the UPS center and instructed that she would not tolerate Jackson as her UPS driver.  If he came back, she said, she would have him arrested.  UPS officials interviewed both Elliott and Jackson, and Jackson admitted that he had gone to Elliott's home, and that Elliott had objected to his visit.  UPS terminated him "for conduct unbecoming of an UPS employee."

Jackson sued UPS, claiming that the company had fired him in retaliation for filing a worker's compensation claim seven years earlier. The district court, determining that Jackson failed to establish a prima facie case of retaliation, granted summary judgment to UPS.  The court explained that Jackson had not established a causal link between his claim and his discharge because those responsible for firing Jackson did not know about his worker's compensation claim.  Moreover, the court continued, Jackson's threatening behavior towards Elliott provided a valid basis for his discharge, which Jackson had not shown to be pretextual.

On appeal Jackson challenges the district court's conclusion that he failed to satisfy his burden of showing a causal link between his worker's compensation claim and his discharge.  To succeed on a claim of retaliatory discharge, Jackson must establish (1) that he was a UPS employee before he was injured; (2) that he filed a worker's compensation claim; and (3) that there was a causal connection between his claim and his discharge.  *See Dotson v. BRP U.S., Inc.*, 520 F.3d 703, 707 (7th Cir. 2008); *Carter v. Tennant Co.*, 383 F.3d 673, 677 (7th Cir. 2004).  But the element of causation is not met if, among other things, UPS had a valid basis—that is to say, one that is not pretextual—for firing Jackson.  *See Carter*, 383 F.3d at 677.

We agree with the district court's analysis.  It is "essential" for a plaintiff asserting retaliatory discharge under Illinois law to establish that those responsible for firing him knew about his worker's compensation claim.  *See Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 769 n.7 (7th Cir. 1994)(citing *Marin v. Am. Meat Packing Co.*, 562 N.E.2d 282, 286 (Ill. App.

1990)); *see also Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 483 (7th Cir. 2004) (whistleblower retaliation); *Stagman v. Ryan*, 176 F.3d 986, 999-1001 (7th Cir. 1999) (First Amendment retaliation). Jackson, however, produced no evidence that any of the supervisors responsible for firing him, namely, UPS Business Manager Ron Phillips and Labor Manager Mark Collins, were aware of his 1999 benefits claim. UPS, on the other hand, submitted depositions in which Phillips and Collins asserted that they were not.

Jackson also takes issue with the district court's determination that, even if his supervisors knew about his worker's compensation claim, UPS had a valid basis for firing him. He points to a decision from a state unemployment-benefits appeal concluding that he was not fired for misconduct, and argues that this is evidence that his confrontation with Elliott was simply a pretext for retaliation. Illinois law, however, explicitly makes such agency decisions inadmissible in any dispute other than one involving unemployment benefits. 820 ILCS 405/1900B.

Accordingly, we **AFFIRM** the judgment of the district court.